No. 2891.

## MECHANICS' AND TRADERS' BANK *v.* UNION BANK.

| 25 | 387 |
| 45 | 651 |

| 25 | 387 |
| 52 | 921 |

As a sovereign, the United States is bound by the limitations of the federal constitution, and, of course, it can not appoint a judge to a State court, much less create a State court and appoint the judge to administer it.

The President, representing the United States in the exercise of its sovereign powers, could not create a court to decide any civil controversy.

This could only be done by Congress under the limitations of the constitution.

But, in the exercise of war powers, the United States is not restrained by the limitations which the constitution imposes on it as sovereign.

Its business as a warrior is to conquer, to restore peace and to maintain the government, and it can use any means necessary to the end, regardless of all restraints, except the law of nations.

When the United States captured the city of New Orleans in 1862, the civil government, existing under the Confederacy, ceased to have authority. As an incident of war powers, the President had the right to establish civil government, to create courts to protect the lives and the property of the people.

The General commanding the military forces of the United States which captured the city, had the right to establish the provisional court called the Provost Court, which rendered the judgment against the plaintiff in this case. That court had authority, temporarily, to decide all civil causes.

The plaintiff, who paid under protest a judgment rendered by a competent court, established by the United States in the exercise of its war powers after the capture of New Orleans, has no cause of action against its judgment creditor for the money paid in pursuance of the decree of that court, and that judgment is validated by article 149 of the constitution of this State.

APPEAL from the Sixth District Court, parish of Orleans. *Cooley,* J. *Randolph, Singleton & Browne* and *T. H. Kennedy,* for plaintiff and appellant. *Lea, Finney & Miller,* for defendant and appellee.

WYLY, J. The plaintiff sues to recover $130,000 which it paid to the defendant under a judgment of the Provost Court established by General Butler, in this city, in May, 1862.

The payment was made under the following protest:

"Union Bank *v.* Mechanics' and Traders' Bank.—Provost Court.— The Mechanics and Traders' Bank having been condemned by judgment of this court to pay to plaintiff $130,000 in currency, and being thus compelled to pay said amount of said judgment, the said bank pays the same under the protest that the said judgment is illegal and void, because the court had no jurisdiction of the case.

(Signed)            WALTER G. ROBINSON.

Attest: J. E. BERNARD."

" The money was paid in my presence under the above protest.

(Signed)          J. M. BELL, Provost Judge.

July 24, 1862."

The important question is: Was the judgment which the plaintiff was compelled to pay an absolute nullity, and can he recover from the defendant the amount paid by reason of said judgment?

This raises the question whether General Butler had the right after the capture of the city, in May, 1862, to appoint a judge to try civil cases. If he had this right, the judgment was not an absolute nullity, and the amount paid by the plaintiff can not be recovered.

If the judge had the right to hear and determine the case, the plaintiff can not recover the money paid in satisfaction thereof, even though it be conceded that there was not sufficient proof to authorize the judgment, or that the debt was for confederate money.

As a sovereign the United States is bound by the limitations of the constitution, and, of course, it can not appoint a judge to a State court, much less create a State court and appoint the judge to administer it.

The President representing the United States, in the exercise of its sovereign powers, could not create a court to decide any civil controversy. This could only be done by Congress under the limitations of the constitution. But in the exercise of war powers, the United States is not restrained by the limitations which the constitution imposes on it as a sovereign. Its business, as a warrior, is to conquer, to restore peace, and to maintain the government; and it can use any means necessary to that end, regardless of all restraints, except the law of nations.

Under the constitution the United States has the right to make war, to raise and support armies and navies, to suppress insurrections and repel invasions. The measures to be taken in carrying on war and to suppress insurrections are not defined; and the decision of all such questions is in the discretion of the government to whom these powers are confided by the constitution.

When the United States captured the city of New Orleans in 1862, the civil government existing under the Confederacy ceased to have authority. As an incident of war powers the President had the right to establish civil government, to create courts to protect the lives and the property of the people. This was expressly decided in the case of the Grapeshot, 9 Wallace 129.

The question is, had the general commanding the military forces of the United States which captured the city the right to establish the provisional court, called the Provost Court, which rendered the judgment against the plaintiff? We are of the opinion that he had. This was an exercise of the war powers of the United States, presumably with the consent and authorization of the President, the com-

mander-in-chief; and of the propriety of the exercise of these powers we are not the judges. The decision of all such questions rests wholly with those to whom the war powers were confided by the constitution. Finding no limitation in the constitution upon the exercise of war powers by the Congress and the President, this court can not decide that the President was without authority to confer the power upon General Butler, which he presumably did, to establish the Provost Court and to appoint Judge Bell, with authority, temporarily, to decide all civil causes, including the one now complained of.

In New Mexico during the war, General Kearny, commanding the military forces of the United States, organized a provisional government, and not only established inferior and superior courts, but also ordained a code of laws; and the Supreme Court of the United States recognized and sustained his right to do so. See the case of Leitendorfer v. Webb, 20 Howard 176; also Cross v. Harrison, 16 Howard 164; Burke v. Fregre, 22 An. 629; and Lanfear v. Mestier, 18 An. 497; also Wilcox v. Jackson, 13 Peters 498.

The plaintiff, therefore, who paid a judgment rendered by a competent court, established by the United States in the exercise of its war powers, the only authority competent to organize a court in this city at the time, has no cause of action against its judgment creditor, the defendant, for the money paid in pursuance of the decree of that court. The United States had authority to establish this court; and the judgment is validated by article 149 of the constitution of this State.

It is therefore ordered that the judgment herein in favor of the defendant be affirmed with costs.

Rehearing refused.

Writ of error to the United States Supreme Court granted by Justice Bradley and filed on the twenty-fourth of September.